USDC SCAN INDEX SHEET

















CGL   9/28/04    9:50
3:04-CV-01882   HANSON V. HUNTINGTON LEARNING
*4*
*P/A.*

Original

1  Robert L. Purvin, Esq. (SBN 56021)
2  3500 Fifth Avenue, Suite 103
   San Diego, CA 92103
3  619-209-3775
   Attorney for Plaintiffs
4

FILED

04 SEP 27 PM 12: 33

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

5

6

7

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12 | PETER L. HANSON, an individual;          ) | Case No. 04CV1882 LAB (BLM)
   | MARSHA A. HANSON, an individual;         ) |
13 | and FUTUREDGE, L.L.C., a California Limited ) | MEMORANDUM OF POINTS AND
   | Liability Company.                        ) | AUTHORITIES IN SUPPORT OF
14 |                                           ) | PLAINTIFFS' EX PARTE
   |                                           ) | APPLICATION FOR TEMPORARY
15 |                                           ) | RESTRAINING ORDER AND
   |            Plaintiff,                     ) | ORDER TO SHOW CAUSE WHY
16 |                                           ) | A PRELIMINARY INJUNCTION
   | v.                                        ) | SHOULD NOT ISSUE.
17 |                                           ) |
18 | HUNTINGTON LEARNING CENTERS, INC.         ) |
   | and DOES 1 through 25, inclusive,         ) |
19 |                                           ) |
20 |                                           ) | Date: October 1, 2004
   |                                           ) | Time: 10:00 a.m.
21 |                                           ) | Courtroom: 9
   |            Defendants.                    ) | Judge: Hon. Larry Alan Burns
22 |                                           ) |

23

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIES
    NOTICED EX PARTE APP FOR TRO AND OSC.

# I.

## INTRODUCTION

Plaintiff's Complaint seeks equitable relief in connection with the expiration on September 27, 2004, of a franchise to operate a Huntington Learning Center business in Poway, California. Plaintiffs operate four such centers (Carlsbad, Escondido and Irvine in addition to the Poway location) under contracts that have varying expiration dates, the last of which is January 19, 2007. Each of the agreements contain both in-term and post-terms covenants against competition which are in dispute. Plaintiffs seek a stay of the September 27, 2004 expiration date of the Poway Agreement to preserve the status quo until the disputes are resolved. Plaintiffs further seek the enforcement of the mandatory mediation clause contained in one of the agreements in dispute (which is tied to all the agreements), and in the event this dispute cannot be resolved through mediation, Plaintiffs seek an order reforming all of the agreements to have a common expiration date that will avoid most of the issues in dispute.

Plaintiffs also seek a declaration that California Business and Professions Code, section 20040.5. mandates that proper jurisdiction and venue of this dispute is in California.

Plaintiffs and Defendant have entered into four franchise agreements, including the Poway Franchise Agreement which is the subject of this Motion for Preliminary Injunction. Each of these agreements are referenced in and attached as exhibits to Plaintiffs' Verified Complaint.

The Poway Franchise Agreement was executed on or about September 28, 1994 between Plaintiffs, PETER L. HANSON and MARSHA A. HANSON and Defendant HUNTINGTON LEARNING CENTERS, INC., and thereafter transferred to FUTUREDGE, L.L.C. with the permission of HUNTINGTON LEARNING CENTERS, INC. Under the terms of the Poway

Franchise Agreement Plaintiffs were granted the right to operate a Huntington Learning Centers Franchise at 1312 Avenida Granada, Poway, CA 92064. The Poway Agreement is for a ten year term and expires under its own terms on September 27, 2004. (See, Exhibit 1 to Plaintiff's Verified Complaint.)

The Poway Franchise Agreement (as well as the other three agreements) contains a post-tem non-competition clause which Plaintiffs contend is not enforceable under California law. The post-term non competition clause provides:

> For a period of three (3) years after the expiration, termination or non-renewal of
> the Franchise Agreement, and, if the Franchisee is a corporation, upon the sale of
> the stock or assets of Franchisee corporation, and, if the Franchisee is a
> partnership, upon the sale of any partnership interest, no Restricted Group
> member shall: (1) Directly or indirectly divert or attempt to divert any business of
> or any customer of the Franchised Center to any competitor or any other business;
> or (2) directly or indirectly, for any Restricted Group member or on behalf of, or
> in conjunction with any other person, partnership or corporation, own, maintain,
> engage in, or have a controlling interest in any business the same as or similar to
> the Franchised Center: (i) within the Territory and twenty five (25) miles beyond
> the perimeter of the Territory; and (ii) within the territory of any other present or
> future franchisee of the Franchisor; and (iii) within the county in which any
> present or future Huntington Learning Center is owned or operated by the
> Franchisor or any affiliate. (See, Exhibit 1 to the Verified Complaint, ¶12.21(b).)

On or about September 1, 2004, Defendant issued notice to Plaintiffs of its intent to reduce the scope of ¶12.21(b) to a period of 1 year and for a distance of 1 mile (reduced from 25

miles as noted above). (See, Exhibit 5 to Verified Complaint.) Plaintiffs dispute that such purported reduction in scope ¶12.21(b) has any impact on the law and the relief sought in this matter.

In addition, the Poway Franchise Agreement provides that upon expiration or non-renewal of the Franchise Agreement for any reason whatsoever the "Franchisee shall comply fully with all terms, conditions and covenants of Paragraph 12.21 of the Franchise Agreement" (Exhibit 1, to Verified Complaint, ¶17.01(a)(2).); and the "Franchisee shall immediately cease and desist from using any telephone numbers listed in any telephone directories under the name "Huntington Learning Center" or any similar name. Upon written Franchisor demand, the Franchisee shall direct the telephone company servicing the Franchised Center to terminate the use of said telephone numbers; or, at the Franchisor's written direction, to transfer said telephone phone numbers and telephone listings in all telephone directories to the Franchisor, or to such person and at such premises as the Franchisor shall direct." (Exhibit 1 to Verified Complaint, ¶ (17.01(a)(5).) In addition the Poway Franchise Agreement provides: "To accomplish the actions described in Paragraphs 17.01(a)(5) . . . of the Franchise Agreement, the Franchisee hereby irrevocably appoints the Franchisor or the Franchisor's nominee to be the Franchisee's attorney-in-fact coupled with an interest, with power of substitution, to execute and file, on the Franchisee's behalf, any document required to be executed and filed by the Franchisor or perform any legal act necessary to effectuate the foregoing." (See, Exhibit 1 to Verified Complaint, ¶17.01(b).)

Plaintiffs, now seek a preliminary injunction and stay of the expiration date of the Poway agreement pending determination of this dispute on the merits, enforcing the mediation clause in the Irvine Agreement, and enjoining Defendant from any attempt to gain assignment of

Plaintiffs' business phone number. Plaintiffs are willing to continue to operate under the terms of the Poway Franchise Agreement as if it continued to be in full force and effect, until a determination of the merits of Plaintiffs' claims can be had in this action. Plaintiffs will continue to pay royalties and advertising fees, and meet all of the other terms of the existing Poway Franchise Agreement, as they have faithfully done for the past ten years.

## II.

## STANDARDS FOR A TRO/PRELIMINARY INJUNCTION ARE MET IN THIS CASE

The standards for granting a temporary restraining order are the same as those for granting preliminary injunctive relief. However, a temporary restraining order may issue on informal notice or without notice where there is a threat of irreparable harm. (Code Civ. Proc. § 527, subd. (c)(2); Cal. Rules of Court, rule 379.) The notice requirement for issuance of a preliminary injunction, however, calls for compliance either with the normal motion procedure of the Code of Civil Procedure section 1005 or the statutory provisions governing a temporary restraining order and order to show cause. (Code Civ. Proc. § 527, subd. (a); 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies § 368, pp. 300-301.) In the instant case, Plaintiffs seek a temporary restraining order and an order to show cause why a preliminary injunction should not issue.

A preliminary injunction may be granted at any time before judgment if the verified complaint or affidavits show sufficient grounds exist therefore. Code Civ. Proc. § 527(a).

In exercising its discretion, the trial court must consider two interrelated factors: (1) the harm to be suffered by plaintiffs if the injunction does not issue as compared to the harm to be suffered by defendants if it does; and (2) the likelihood that plaintiffs will prevail on the merits of the case at trial, *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442, 261

Cal.Rptr. 574; *King v. Meese* (1987) 43 Cal.3d 1217, 1226, 240 Cal.Rptr. 829; *Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 295, 268 Cal.Rptr. 219. The theory behind this two-pronged test is that by balancing the respective equities of the parties, the court concludes that, pending a trial on the merits, the defendant should or should not be restrained from exercising the right claimed by him or her. *Loder v. City of Glendale* (1989) 216 Cal.App.3d 777, 782, 265 Cal.Rptr. 66. The requirements for a preliminary injunction are met in this case because immediate relief is necessary in order to determine the parties' respective rights under the franchise agreements prior to expiration, and to prevent any remedy ultimately awarded to Plaintiffs from being no remedy at all.

## A. Plaintiffs Have a Strong Probability of Success on the Merits.

California has a long standing and well established public policy against the enforcement of non-competition clauses, as has been codified by California Business and Professions Code §16600, which states:

> "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

Section 16600 has been held by the California courts to represent a strong public policy which would override the choice of law provision in the contract at least with regard to the restrictive covenant. *Muggill v. Reuben H. Donnelley Corp.,* 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); *Frame,* 20 Cal.App.3d at 673, 97 Cal.Rptr. 811. *See also Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1338 (9th Cir.1980).

Case law interpreting Section 16600 has applied its rule to covenants not to compete. *See Beatty Safway Scaffold, Inc. v. Skrable,* 180 Cal.App.2d 650, 656, 4 Cal.Rptr. 543 (Cal.Ct.App.1960) (holding that a covenant not to compete included in an exclusive distribution

agreement was unenforceable pursuant to § 16600); *Scott v. Snelling and Snelling*, 732 F.Supp. 1034, 1040-42 (N.D.Cal.1990)(holding that while there was no case directly on point, the California courts have interpreted and applied § 16600 broadly; therefore a covenant not to compete in a franchise agreement was unenforceable).

Plaintiffs simply seek the protection of B&P Code §16600 to settle their rights to operate an independent business following the expiration of their Poway franchise agreement. Plaintiffs have operated their franchised business according to its terms for 10 years. Unfortunately, the relationship between Defendant and its franchise owners (including Plaintiffs) have been marred by almost continuous disharmony and litigation, such that Plaintiffs have determined to allow each of their franchise agreements to expire according to their terms.

The other three (3) agreements expire between next year and January 19, 2007 (within about a two year period), and Defendant contends that Plaintiffs may not operate a competing business while they are also operating a Huntington Learning Center Franchise. Plaintiffs have offered to extend all of their franchises to a common date certain to avoid any conflicts, but Defendant has rejected this offer. Defendant prefers to keep Plaintiffs in a mode whereby they will be continuously in a position where there remains an unexpired agreement.

Plaintiffs further seek an order of the Court to enforce the mandatory mediation clause contained in one of the franchise agreements (the Irvine Agreement). Although this clause only appears in one of the agreements, the issues raised by the Irvine Agreement are identical to the issues present in all four agreements, and these issues are inextricably intertwined. Plaintiffs have formally demanded mediation under the Irvine Agreement. Defendant's response was to give Plaintiffs notice of the filing of an (unserved) lawsuit in New Jersey.

The New Jersey lawsuit had not been served on Plaintiffs at the time Plaintiffs applied for

Temporary relief in California State court. The New Jersey lawsuit was served on Plaintiffs Peter Hanson and Marsha Hanson on September 17, 2004. However, such a lawsuit violates California Business and Professions Code § 20040.5 which provides:

> A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state.

Plaintiffs further seek an order from this Court affirming that proper jurisdiction and venue of this dispute is California, and such jurisdiction has been accepted by Huntington by its election to sell franchises in this state.

**B.  Plaintiffs Will Suffer Irreparable Harm If the Requested Preliminary Injunction Is Not Granted and There Is No Adequate Legal Remedy.**

If injunctive relief is not granted, Plaintiffs face the unfair burden of operating without knowing their legal rights to do so or closing the business they have spent the last ten years building. Plaintiffs simply desire to maintain the status quo until their rights are determined, and then to conduct their affairs in a legally appropriate manner. Plaintiffs must undergo substantial expense to de-identify their business, and seek to do so with the blessings of this Court and California law.

Defendant has recommended that Plaintiffs simply sell their franchised business to avoid the competition issue. Plaintiffs cannot sell their franchises without disclosing their flawed relationship issues. Plaintiffs will suffer irreparable harm if they are unable to allow their franchise to expire, and continue to build their business under a new name allowing them to preserve the equity in their business and thereby receive the fruits of their hard work and effort.

**C.  The Balance of Hardships Tips Sharply in Plaintiff's Favor.**

Plaintiffs merely seek the preservation of the status quo while the issues in their declaratory relief action are determined. Plaintiff's action for declaratory relief is entitled to priority under California Civil Code of Procedure, § 1062.3, which provides:

(a) Except as provided in subdivision (b), actions brought under the provisions of this chapter shall be set for trial at the earliest possible date and shall take precedence over all other cases, except older matters of the same character and matters to which special precedence may be given by law.

(b) Any action brought under the provisions of this chapter in which the plaintiff seeks any relief, in addition to a declaration of rights and duties, shall take such precedence only upon noticed motion and a showing that the action requires a speedy trial.

As such, Plaintiffs are seeking a preliminary injunction for a fairly short period of time until a full hearing on the merits can be had. At the Ex Parte Hearing on October 1, 2004, Plaintiffs intend to request that the already scheduled hearing date of November 22 for Defendants motion to dismiss also be set as the hearing date of Plaintiffs application for a preliminary equitable relief.

Plaintiffs are fully prepared to continue to honor the terms of their franchise agreements, including the payment of all fees and operating in compliance with the agreements. There is no allegation that Plaintiffs have failed to materially comply with their agreements. Defendants are not prejudiced by a short extension of the franchise agreements. Ultimately, Plaintiffs contend this dispute should be settled by adjusting the expiration dates of all four agreements to a common date to avoid any conflict.

The balance of equities issue has been considered in the franchisor/franchisee context by numerous courts. These courts have refused to grant franchisors' requests for preliminary

injunctions enforcing restrictive covenants on the basis that the balance of equities weighed in favor of the franchisee. For example, in <u>Kronn v. Candleman Corp.</u>, Bus.Franchise Guide (CCH) ¶11,731 (Minn Dist. Ct. August 4, 1999), after the franchise agreement expired, the franchisee continued to operate its candle shop under a different name and at the same location as the former franchise. The Court denied preliminary injunctive relief to a franchisor because it failed to show irreparable harm and the court was concerned about the injunction's severe impact on the former franchisees, because it would effectively put the former franchisee out of business. Attached hereto as Exhibit "1.")

Similarly, in <u>Candleman Corp. v. Farrow</u>, Bus. Franchise Guide (CCH) ¶11,730 (Minn Dist. Ct. June 9, 1999), the Court refused to grant the franchisor's motion for preliminary injunction, enforcing a ten-mile, two-year post-term covenant, despite holding as a matter of law that the franchisor's non-compete provision was reasonable in both scope and duration. The Court found that the potential harm to the franchisee was substantial, *in essence putting him out of business and greatly hindering his ability to earn a living and to pursue his claim against the franchisor, and that this outweighed the injury to the franchisor.* (Attached hereto as Exhibit "2.")

In the instant case, Plaintiffs simply desire to maintain the status quo until their rights are determined, and then to conduct their affairs in a legally appropriate manner. Defendants would suffer no harm if the requested injunction issues. Defendant would still collect royalties and Plaintiff would agree to comply with the in-term provisions of the Agreement. In deed, defendants have consistently stated their desire for Plaintiffs to renew the Poway franchise for a new 10-year term, albeit on conditions that are not acceptable to plaintiffs. Clearly, under the facts of this case, the balance of hardships tips strongly in Plaintiffs' favor.

# III.

## CONCLUSION

Plaintiffs respectfully pray for:

1. An order temporarily staying the expiration date of the Poway Agreement pending a hearing on the Order to Show Cause.

2. Ordering Defendant, Huntington Learning Centers, Inc., to appear and show cause, no later than 21 days from the entry of the temporary restraining order, why a preliminary injunction should not issue staying the expiration date of the Poway Agreement pending determination of this dispute on the merits, enforcing the mediation clause in the Irvine Agreement, enjoining Defendant from any attempt to gain assignment of Plaintiffs' business phone number, and an order of this Court declaring that proper jurisdiction and venue of this dispute is in California pursuant to Business and Professions Code § 20040.5; and,

3. Other and further relief as the Court deems just and proper.

Date: ___4|22___, 2004

_____
Robert L. Purvin, Esq.
Attorney for Plaintiffs

Exhibit 1

**Michael J. Kronn and Lois M. Kronn v. Candleman Corporation and Michael Wise, an individual.**

Minnesota District Court, Fourth Judicial District. Case No. CT99-8287. Filed August 4, 1999.

**Preliminary Relief —Enforcement of Noncompetition Agreement —Irreparable Harm — Adequate Remedy at Law —Fraud Allegations. —**A candle shop franchisor would not be irreparably harmed if a former franchisee were not enjoined from continuing to operate a candle shop at the former franchise. The franchisee claimed that the franchise agreement, including the agreement's noncompetition provision, was void due to the franchisor's alleged fraud and statutory violations. If the franchisee failed to prove its case, the franchisor would have a cause action for breach of the noncompetition clause, thereby providing the franchisor with an adequate remedy at law. Claims that allowing the franchisee to continue operating a competing store would undermine the franchisor's entire system were rejected.

**Back reference: ¶845.**

## MEMORANDUM OF LAW

### [In full text]

KNOLL, J.: Plaintiffs have brought an action seeking recision of their franchise agreement with the Defendants on several grounds including common law fraud and misrepresentation, breach of contract, and violation of the Minnesota Franchise Act, Minnesota Statutes, Section 80C.01 *et. sec.* Defendant Candleman is a Minnesota corporation and franchisor of candle shops called "Candleman," with numerous franchises around the country. Defendant Wise is Candleman's President. Plaintiffs contracted with Defendants for the operation of a newly opened candle shop in South Carolina, and signed a five-year franchise agreement with the Defendants. Defendants' attorneys negotiated a lease agreement for Plaintiffs' shop that runs for seven years, two years longer than the franchise agreement.

Plaintiffs apparently did not renew the franchise agreement with Defendants, which expired in June 1999, and have continued to operate a candle shop under a different name in the same location. Defendants have moved to enjoin the Plaintiffs from operating a candle shop in the same location under any name pending resolution of the Plaintiffs' lawsuit, relying on the enforceability of a non-compete provision of the franchise agreement signed by the Plaintiffs. Defendants argue, *inter alia*, that if the non-compete clause in Plaintiffs' contract is not enforced, other Candleman franchisees will be encouraged to follow suit, thus threatening Defendants' entire franchise system.

Plaintiffs allege in their complaint, *inter alia*, that the underlying franchise agreement is unenforceable due to Defendants' actions in negotiating and carrying out the agreement. As such, they argue, the agreement, including its non-compete clause, is unenforceable. Plaintiffs argue that an injunction would effectively put them out of business because 99% of sales from their independent business are from candles and related products. Thus, Plaintiffs argue, they would be unable to make payments under a lease agreement negotiated by Defendants' attorneys, and in effect for a period longer that the franchise agreement.

It is within the trial court's sound discretion whether to grant an injunction. *Cherne Indus., Inc. v. Grounds Associates, Inc.*, 278 N.W.2d 81, 91 (Minn. 1973). The movant bears the burden to show that the injunction is necessary to prevent irreparable injury and that any available legal remedy is not adequate. *Id.* at 92. Injunctive relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury, and only when the person seeking the injunction establishes the material allegations entitling him to relief. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499,

*Copyright © 2004, **CCH** INCORPORATED. All rights reserved.*

*Exhibit 2*

110 N.W.2d 348, 352 (1961). The purpose of a temporary injunction is to preserve the status quo until judgment can be made on the merits of a dispute. *Upper Midwest Sales Co., et al. v. Ecolab Inc.*, 577 N.W.2d 236, 244 (Minn. Ct. App. 1998); *Pickerign v. Pasco Mktg., Inc.*, 303 Minn. 442, 446, 228 N.W.2d 562, 565 (1975).

A temporary injunction, which is an extraordinary equitable remedy, "should be granted only when it is clear that the rights of a party will be irreparably injured before a trial on the merits is held." *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982).

Minnesota law requires that the court consider five factors in deciding whether to grant injunctive relief:

> 1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief;

> 2) The harm to be suffered by the movant if the temporary restraint is denied as compared to that inflicted on the non-movant if the injunction issues pending trial;

> 3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief;

> 4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, state and federal; and

> 5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Bros, Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 321 (Minn. 1965).

A party seeking a temporary injunction must show it has no adequate remedy at law and that injunctive relief is needed to prevent irreparable injury. *Unlimited Horizon Mktg, Inc., v. Precision Hub, Inc.*, 533 N.W.2d 63, 66 (Minn. Ct. App. 1995). The failure to show irreparable harm is by itself, a sufficient basis upon which to deny a motion for a temporary injunction. *Morse v. City of Waterville*, 458 N.W.2d 728 (Minn. Ct. App. 1990). The court concludes that Defendants have failed to demonstrate irreparable injury, and that they have no adequate remedy at law.

In this case, Plaintiff claims that their agreement with the Defendants is void due to Defendants' alleged various actions. As such, if Plaintiffs fail to prove their case against Defendants, Defendants will have a cause of action against Plaintiffs for breach of the non-compete clause of the agreement, providing Defendants with an adequate remedy at law. The court does not adopt Defendants' view that if Plaintiffs are allowed to "violate" their non-compete agreement, other franchisees will follow suit, thus undermining Defendant's entire franchise system. The injunctive process is not to be used to alleviate fears or apprehensions of litigants. *J. F. Quest Foundry Co. v. Int'l Molders & Foundry Workers Union of North America Local No. 132*, 13 N.W.2d 32, 35, 216 Minn. 436, 441 (1944).

Furthermore, the status quo ante will be maintained by allowing the Plaintiffs to remain in business and continue to pay rent under its lease negotiated by Defendants' attorneys. A party seeking an injunction must show irreparable harm if the injunction is not issued, while the party opposing the injunction need only show substantial harm in the event that it is issued. *Shakopee Mdewakanton Sioux (Dakota) Community, et al. v. Minnesota Campaign Finance and Public Disclosure Board, et al.*, 586 N.W.2d 406, 510 (Minn. Ct. App. 1998).

The severe result flowing from the issuance of the requested injunction would be substantial, indeed. Because the court concludes that the Defendant has failed to show irreparable injury not sufficiently

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*

remedied at law, the remaining factors will not be addressed. The injunction should not issue. The court has so ruled.

*Copyright © 2004, CCH INCORPORATED.  All rights reserved.*

Exhibit 2

**Candleman Corporation v. Richard Farrow.**

Minnesota District Court, County of Crow Wing, Ninth Judicial District. Case No. C8-98-2453. Filed June 9, 1999.

> **Preliminary Relief —Trademark Infringement —Enforcement of Noncompetition Provision — Balance of Harm. —**A former candle shop franchisee was temporarily enjoined from using his former franchisor's trademarks and was ordered to return to the franchisor all manuals, master catalogs, signage, and other items identified as confidential and proprietary information. However, the franchisor's motion to enjoin the franchisee, for two years, from operating a competing candle shop within 10 miles of the former franchise was denied. Although the geographic and temporal restrictions in the franchise agreement's noncompetition provision were reasonable, a temporary injunction enforcing the noncompetition provision would put the franchisee out of business and greatly hinder his ability to earn a living and pursue his claims against the franchisor.

**Back reference: ¶845, ¶1100.**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

### [In full text]

ZIMMERMAN, J.: This action came on for a hearing on April 5, 1999, before the Honorable Richard A. Zimmerman, on a motion by Plaintiff Candleman Corporation for a temporary injunction enjoining Defendant Richard Farrow from (1) using or infringing Candleman's registered trademarks; (2) operating a candle or candle accessory store within a ten mile radius of his former Candleman store for two years from the date of the Order; and (3) retaining Candleman's manuals, Master Catalog, signage, and any other confidential and proprietary materials.

Alan M. Anderson, Esq., and C. Brent Robbins, Esq., appeared on behalf of the plaintiff. Joseph Thomson, Esq., appeared on behalf of the defendant.

The plaintiff's motion for dismissal of the defendant's counterclaim shall be addressed in a separate order.

Based upon the file, the record, and all submissions and proceedings herein, and the attached Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED that the Plaintiff's motion for a temporary injunction is in part GRANTED:

The Defendant, officers, directors, shareholders, agents, and all persons in active concert with the Defendant who receive actual notice of the Order shall:

> 1. Immediately cease using or infringing Candleman's registered trademark;

> 2. By June 10, 1999 return to the Plaintiff all manuals, Master Catalog, signage, and all items identified by the Plaintiff as confidential and proprietary information belonging to the Plaintiff.

IT IS HEREBY ORDERED THAT the plaintiff's motion to enjoin the defendant from operating a candle or candle accessory store within a ten mile radius of his former Candleman store for two years is DENIED.

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*

Exhibit 2

This temporary injunction shall remain in full force and effect until further Order of this Court.

June 2, 1999

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Minn.R.Civ.P. 65, the Court makes the following Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. Plaintiff Candleman Corporation ("Candleman") is a franchiser that offers individuals the opportunity to own and operate stores selling candles and candle accessories throughout the United States. Candleman is a Minnesota corporation with its principal place of business located in Brainerd, Minnesota.

2. Defendant Richard A. Farrow ("Farrow") operated a Candleman franchise store at the Liberty Tree Mall in Danvers, Massachusetts.

3. Farrow initially contacted Candleman by telephone at Candleman's headquarters in Brainerd, Minnesota about the possibility of becoming a Candleman franchisee.

4. Farrow traveled to Minnesota to meet with Candleman on August 5, 1993 to discuss his possible purchase of a Candleman franchise.

5. Candleman and Farrow entered into a Franchise Agreement on October 22, 1993 for a term of five years. The Franchise Agreement stated that Candleman was a Minnesota Corporation and required Farrow to send royalty payments to Candleman in Minnesota. Farrow sent these payments and other correspondence with Candleman in Minnesota.

6. The Franchise Agreement states that the District Court in Crow Wing County, Minnesota, is the exclusive forum for resolving disputes between Candleman and Farrow.

7. The Franchise Agreement required Candleman to, *inter alia*, provide its trademarks, training, support, and manuals to Farrow. In exchange, Farrow was required to pay royalties and perform other tasks.

8. Farrow was required upon the expiration of the Franchise Agreement to: (1) cease using Candleman's trademarks and intellectual property; (2) not "have any interest whatsoever" in any business that sells "candles, candle holders, and/or related accessories" within 10 miles of their former Candleman store, or within 10 miles of any other Candleman store, for a period of two years; and (3) return proprietary and confidential material supplied to them by Candleman.

9. On April 3, 1998, Candleman sent Farrow a letter outlining how he could renew the term of his Franchise Agreement. On April 16, 1998, Farrow advised Candleman that he did not wish to renew his Franchise Agreement.

10. In letter dated April 30, 1998, and August 27, 1998, Candleman outlined Farrow's obligation under the Franchise Agreement based upon his decision to terminate his relationship with Candleman.

11. The Franchise agreement expired on October 21, 1998.

12. Farrow admits that he is still selling candles and candle accessories at his Liberty Tree Mall in Danvers, Massachusetts.

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*

13. The Franchise Agreement states that "[v]iolation of these non-competition covenants will result in immediate and irreparable injury to Franchiser for which no adequate remedy at law will be available. Therefore, Franchisee hereby consents to the entry of an injunction ..."

14. Farrow has failed to return Candleman's manuals, the Master Catalog, signage, or other confidential and proprietary information belonging to Candleman.

15. Farrow contends that Candleman's Franchise Agreement is unenforceable due to Candleman's fraud and violation of applicable regulatory laws.

16. Farrow signed a seven-year lease, expiring on January 31, 2001, with Liberty Tree Mall to run a candlestore named "Fire Light Gifts". The terms of that lease limit Farrow use of his space "[o]nly as a first-class, high-quality retail store principally and primarily for the display and sale of candles; and, as incidental thereto, for the display and sale of candle accessories made from brass, pewter, crystal, wood and silver, provided the display area devoted to the display of said incidental items is limited to no more than the percentage of the sales area customarily used in 'Candleman' stores of similar size and nature to the Candleman store at the desmised [sic] premises for such displays. The demised premises shall be used for no other purposes [sic] or purposes."

17. Liberty Tree Mall management has given Farrow a lease amendment to sell gifts other than candles and candle accessories. However, candles and candle accessories must still account for 80 to 85 percent of the product mix offered at the store.

18. If granted a temporary injunction would put Fire Light Gifts out of business.

### Conclusions of Law

1. Candleman's motion for a temporary injunction seeks to enjoin Farrow from (1) using or infringing Candleman's registered trademarks; (2) operating a candle or candle accessory store within a ten mile radius of his former Candleman store for two years from the date of the Order; and (3) retaining Candleman's manuals, Master Catalog, signage, and any other confidential and proprietary materials.

2. When evaluating a motion for temporary injunction, this Court applies the standards outlined in *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 321-22 (Minn.1965). These factors are:

> 1. The nature and background of relationship between the parties preexisting the dispute giving rise to the request for relief;
>
> 2. The harm to be suffered by [the moving party] if the temporary restraining order is denied as compared to that inflicted on the [nonmoving party] if the injunction issues pending trial;
>
> 3. The likelihood that one party or the other will prevail on the merits when the facts of the situation are viewed in light of established precedents fixing the limits of equitable relief;
>
> 4. The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, state and federal;
>
> 5. The administrative burdens involved in judicial supervision in enforcement of the temporary decree.

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*

The Court will consider these factors in order.

3. *The Relationship of the Parties* —this factor examines if there is anything in the parties' relationship that either favors or counsels against the issuance of an injunction. Candleman and Farrow signed a Franchise Agreement. Both parties operated under the Franchise Agreement for the entire term of the Agreement, five years. This Franchise Agreement outlined in great detail the post-agreement obligations of both parties. When Farrow decided not to renew the Franchise Agreement, he knew he was obligated to: (1) cease using Candleman's registered trademarks and trade dress; (2) cease selling candles, candleholders and/or candle accessories at his Candleman store, or within 10 miles of his location; and (3) cease using any methods, techniques, procedures, systems, or materials of any kind which are proprietary to Candleman. Farrow was also required to return all manuals, product catalogs, newsletters, and similar items. The parties' long-term relationship and the clarity of Farrow's obligations all favor issuing a temporary injunction.

4. *The Balance of Harms* —The second *Dahlberg* factor requires the Court to consider "the harm suffered by Plaintiff if the temporary restraint is denied as compared to that inflicted on Defendant if an injunction issues ..." *Dahlberg* 137 N.W.2d at 321.

5. In assessing the balance of harms, the Court begins with the Franchise Agreement, in which the parties agreed that "[v]iolation of these non-competition covenants will result in immediate and irreparable injury to Franchiser for which no adequate remedy at law will be available. Therefore, Franchisee hereby consents to the entry of an injunction ..."

6. Irreparable harm is inferred when a non-compete provision is breached. *Overholt Crop Ins. Service v. Bredeson*, 437 N.W.2d 698, 701 (Minn.App.1989).

7. *Novus Franchising, Inc. v. Gross*, ¶10,842 Bus. Franchise Guide (CCH) (Minn. Dist. Ct., Hennepin Cty. 1994), supports a finding that Candleman will be irreparably harmed unless an injunction issues. In *Novus Franchising*, the court granted a franchiser's motion for a temporary injunction on the basis of a non-compete provision in the parties' franchise agreements. *Id.* At 6-8. The court enforced the non-compete provision, finding that otherwise the franchiser's investment would have gone "for naught." *Id.* At 7.

8. This Court is mindful of Candleman's argument that by permitting Farrow to ignore his contractual commitment and operate a competing store at their former Candleman site might cause other franchisees to similarly ignore their contractual commitments upon expiration. However, Candleman was involved, at least to some degree, in both the site selection and in the signing of the lease, to ensure that Fire Light Gifts would measure up to a Candleman store. Thus, the balance of harms favors Farrow.

9. *Merits of the Claim* —Under Minnesota law, reasonable non-compete provisions are enforceable. *Bess v. Bothman*, 257 N.W.2d 791, 793 (Minn. 1977). The 10 miles two year covenant at issue here is reasonable both in terms of length and geographic scope. See, e.g., *Bess v. Bothman*, 257 N.W.2d at 793 (five year, entire city non-compete provision found reasonable); *Overholt Crop Ins. Service v. Bredeson*, 437 N.W.2d 698, 700, 704 (Minn.App.1989) (two year, four county non-compete provision found reasonable). Furthermore, the Court finds as a matter of law that Candleman's non-compete provision to be reasonably necessary to protect its legitimate business interest. Thus, this factor favors issuance of a temporary injunction.

10. *Federal or State Statutes* —with respect to the fourth factor, there are no state or federal statutes on point with respect to non-compete clauses.

11. *Administrative Burden* —the final *Dahlberg* factor requires the court to examine the administrative burdens involved in enforcement of the temporary decree. *Dahlberg Bros., Inc.*, 137 N.W.2d at 321-22. In this case Candleman seeks an order requiring Farrow to abide by the terms of the Franchise Agreement. Enforcement of the non-compete provision would be straightforward —Farrow either will or will not be selling candles and candle accessories in violation of the Franchise Agreement. Given the ease of

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*

administering compliance with this temporary injunction, this factor supports Candleman's motion.

12. Because the various *Dahlberg* factors are split between the parties this Court must weigh the factors for and against the issuance of a temporary injunction. This Court finds the potential harm to Farrow to be substantial. In essence, a temporary injunction would put Farrow out of business and greatly hinder his ability to earn a living and to pursue his claim against Candleman. This Court finds that a temporary injunction ordering Farrow to cease selling candles and candle accessories should not be issued.

13. The Franchise Agreement has ended between Candleman and Farrow and as such Farrow has no right to continue using Candleman's registered trademarks and trade dress, and Farrow must return all manuals, product catalogs, newsletters, and similar items.

*Copyright © 2004, CCH INCORPORATED. All rights reserved.*